UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEION GRAVES, | Civil Action No. 16-1822 (MCA) |
| Plaintiff, | |
| v. | OPINION |
| THE STATE OF NEW JERSEY, et al., | |
| Defendants. | |

**ARLEO, United States District Judge:**

I. **INTRODUCTION**

Plaintiff Deion Graves, currently confined at the Special Treatment Unit ("STU") in Avenel, New Jersey, has filed the instant Complaint, alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), and seeking leave to proceed *in forma pauperis* ("IFP"). The Court will grant his IFP application. At this time, the Court must also screen the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons explained below, the Court will dismiss the Complaint in its entirety for failure to state a claim for which relief may be granted under 1915(e)(2)(B), and will grant Plaintiff leave to file an Amended Complaint within 30 days with respect to those claims that are dismissed without prejudice.

1

II.   **FACTUAL BACKGROUND**

In this action, Plaintiff has sued the State of New Jersey and two high-level supervisory state officials -- Gary M. Lanigan, the Commissioner of the New Jersey Department of Corrections ("NJDOC") and Jennifer Velez, the Commissioner of the Department of Human Services ("DHS"). The gravamen of Plaintiff's Complaint appears to be that he was assaulted by unidentified subordinates of Lanigan and/or Velez on August 21, 2012 while he was confined in the STU, and was subsequently placed in Temporary Close Custody ("TCC") for a two-year period. He alleges Defendants and their subordinates conspired to assault him and have him placed TCC in retaliation for a conflict that Plaintiff had with a correctional officer while he was incarcerated at East Jersey State Prison.[1] With respect to this allegation, Plaintiff states as follows:

> Plaintiff's alleges that on August 21, 2012 while he was confined at the STU Defendants and subordinates . . . were all complicit in a scheme to target the PLAINTIFF for assault and retaliation because of a conflict that the PLAINTIFF previously had with a Department of Corrections Senior Correction[s] Officer while he was a prisoner at East Jersey State [P]rison in Rahway, New Jersey, and Defendants did with deliberate indifference and purposeful malice authorize the use of force which led to the retaliation an violation of PLAINTIFF's federal and State Constitutional and Statutory rights. Plaintiff alleges that his prosecution by the Department of Corrections and Corrections Supervisors as well as Supervisors of the Department was out of retaliation and malice, the PLAINITIFF was placed in TCC (Temporary Close Custody) for two-years following the assault by the subordinates of Defendant Lanigan, the Commissioner of the Department of Corrections: this placement in TCC (Temporary Close Custody) was authorized by the Department of Human Services personell [sic] working under the authority of Defendant Velez, Commissioner of the Department of Human Services and

---

[1]   Although his Complaint suggests that he was assaulted on August 21, 2012 (ECF No. 1, Complaint at § 2.), it is not clear when Plaintiff was confined in TCC or whether he is still confined there.

2

> violated the Plaintiffs [sic] Eighth Amendment right to Equal Protection of the law.

Petitioner also alleges that his living conditions while in TCC were "hazardous and unsanitary" and that he was "locked behind an 8' x 12' cage that was to remained [sic] locked at all times per DOC Supervisor." (*Id.*)

Plaintiff also alleges that his confinement in TCC was the result of policies and/or procedures and/or regulations established and/or maintained by Defendants Lanigan and Velez. With Respect to Defendant Lanigan, Plaintiff states as follows:

> Mr. Lanigan knew or should have known about an approved or indeed promulgated and directed the various restrictive custodial policies, practices, and procedures including training of DOC personnel and security practices and uses of restraint concerning the manner and scope of the abusive treatment of the PLAINTIFF, that created the punitive environment and excessively restrictive conditions under which the PLAINTIFF is presently confined. Mr. Lannigan [sic] knew or should have known about and approved or failed to supervise subordinates operating under his authority and take steps to prevent or correct each of these violations of the PLAINTIFF's Constitutional rights, as alleged more specifically below.

(*Id.* at § 10.) Similarly, with respect to Defendant Velez, Plaintiff alleges as follows:

> Ms. Velez was complicit in and along with the actions of [Defendant Lanigan], Ms. Velez knew or should have known about and approved or indeed herself promulgate and direct the various policies, practices and procedures concerning the matter and scope of the unconstitutional treatment of the PLAINTIFF that created the punitive environment and excessive restrictive conditions under which the PLAINTIFF is presently confined. Ms. Velez knew or should have known about and approved or failed to take steps to prevent or correct each of these violations of the PLAINTIFF's Constitutional rights as alleged more specifically below.

(*Id.* at § 11.) With respect to both Defendants, Plaintiff's Complaint states that

> Defendants, together have written, adopted, imposed, enforced, maintained and are responsible for a number of written and unwritten rules, regulations, policies, practices, and procedures that makes the conditions of PLAINTIFF's segregation behind a special 8 x 12 cage at the Special Treatment Unit punitive and

3

>
> excessively restrictive prison comparable environment, created, implemented, and enforced by the Defendants.

(*Id.* at ¶ 21.)

Plaintiff's Complaint also describes the history of New Jersey's Sexually Violent Predator Act ("SVPA"), N.J.S.A. 30:4-27, *et seq*, and alleges that Sexually Violent Predators ("SVPs") are entitled to treatment during their involuntary confinement and, under the "Patient Bill of Rights," are also entitled to be free of excessive physical restraint and isolation during their confinement. (*Id.* at ¶ 12-16.)

### III.  STANDARD OF REVIEW

Under the PLRA, district courts must review complaints in those civil actions in which a person is proceeding *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B). The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.* "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

Here, Plaintiff's Complaint is subject to screening under 28 U.S.C. § 1915(e)(2)(B). When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Complaint must also allege "sufficient factual matter" to show that the claim

is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (citation omitted).

Courts are required to liberally construe pleadings drafted by *pro se* parties. *Tucker v. Hewlett Packard, Inc.*, No. 14-4699 (RBK/KMW), 2015 WL 6560645, at *2 (D.N.J. Oct. 29, 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Such pleadings are "held to less strict standards than formal pleadings drafted by lawyers." *Id.* Nevertheless, pro se litigants must still allege facts, which if taken as true, will suggest the required elements of any claim that is asserted. *Id.* (citing *Mala v. Crown Bay Marina*, Inc., 704 F.3d 239, 245 (3d Cir. 2013)). To do so, [a plaintiff] must plead enough facts, accepted as true, to plausibly suggest entitlement to relief." *Gibney v. Fitzgibbon*, 547 F. App'x 111, 113 (3d Cir. 2013) (citing *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012)). "Liberal construction does not, however, require the Court to credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.'" *Id.* (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). That is, "[e]ven a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief. *Id.* (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

IV. **ANALYSIS**

As noted above, Plaintiff has sued the State of New Jersey and two high-level supervisory state officials for violations of his federal and state constitutional rights.[2] The Court next considers whether he has stated a claim for relief against these Defendants.

**a. The State of New Jersey**

Plaintiff may not maintain a civil rights action against the State of New Jersey. "As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute." *Randolph v. New Jersey State Parole Office*, No. CIV.A. 07-376 (RMB), 2007 WL 1521189, at *2-3 (D.N.J. May 21, 2007) (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought. *Id.* (citing *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100 (1984). Section 1983 does not override a state's Eleventh Amendment immunity. *Id.* (citing *Quern v. Jordan*, 440 U.S. 332 (1979)). In addition, the State is not a "person" subject to suit under 42 U.S.C. § 1983. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 68-70 (1989) (holding that States and governmental entities considered

---

[2] To the extent Plaintiff's NJCRA claims mirror his § 1983 claims, those NJCRA claims are addressed in tandem with his federal causes of action. *See Trafton v. City of Woodbury*, 799 F.Supp.2d 417, 443–44 (D.N.J. 2011); *see also Chapman v. New Jersey*, Civ. No. 08–4130, 2009 U.S. Dist. LEXIS 75720, at *7, 2009 WL 2634888 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart...."); *Armstrong v. Sherman*, Civ. No. 09–716, 2010 U.S. Dist. LEXIS 55616, at *15, 2010 WL 2483911 (D.N.J. Jun. 4, 2010) ("[T]he New Jersey Civil Rights Act is a kind of analog to section 1983 ...."); *see generally Hedges v. Musco*, 204 F.3d 109, 122 n. 12 (3d Cir. 2000) (concluding that New Jersey's constitutional provisions concerning search and seizures are interpreted analogously to the Fourth Amendment).

6

"arms of the State" for Eleventh Amendment purposes are not "persons" within the meaning of § 1983). Therefore, the Complaint will be dismissed with prejudice as to the State of New Jersey. To the extent Plaintiff seeks damages from Defendants Lanigan and Velez in their official capacities, these claims are likewise barred by *Will* and are dismissed with prejudice.

### b. Supervisory Defendants Lanigan and Velez

In the Complaint, Plaintiff also seeks to hold Defendants Lanigan and Velez liable in their personal supervisory capacities for the alleged assault and placement in TCC. Because Defendants are high-level supervisory officials, the Court begins by noting that, *respondeat superior* is not a basis for section 1983 liability. Indeed, "[t]o establish liability under § 1983, each individual defendant 'must have personal involvement in the alleged wrongdoing.'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). As such, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Innis v. Wilson*, 334 F. App'x 454, 457 (3d Cir. 2009) (indicating that section 1983 plaintiff could not maintain claim against individual defendant unless said defendant was personally involved in actions causing the claim); *Rode*, 845 F.2d at 1207 (explaining that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*").

The requirements for supervisory liability were recently clarified by the Third Circuit in *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 316-19 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042, 2043 (2015). There, the Third Circuit outlined "two general ways" in which a supervisor-defendant may be liable under the Eighth

Amendment: (1) where the supervisor established a policy, custom, or practice that caused the harm; or (2) where the supervisor personally participated in the constitutional violation. The Third Circuit explained these two general types of supervisory liability as follows:

> [f]irst, liability may attach if they, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct. *Id.* (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995)). "Failure to" claims – failure to train, failure to discipline, or, as in the case here, failure to supervise – are generally considered a subcategory of policy or practice liability.

*Id.*

Plaintiff's Complaint appears to allege that (1) the Supervisory Defendants were part of a conspiracy with unidentified subordinates to assault him and subsequently have him placed in TCC and that (2) the Supervisory Defendants established deficient policies which resulted in his placement in TCC.

The Court will dismiss without prejudice Plaintiff's conspiracy claim under § 1983 for failure to state a claim for relief under 28 U.S.C. §§ 1915(e)(2). Civil rights conspiracies brought under Section 1983 require a "meeting of the minds," and to survive screening or a motion to dismiss, plaintiffs must provide some factual basis to support the existence of the elements of a conspiracy, namely, agreement and concerted action. *See Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970). Here, Plaintiff has not provided sufficient facts regarding the Supervisory Defendants' alleged participation in the alleged conspiracy to assault him and have him placed in TCC. Nor does his

Complaint provide sufficient facts to suggest that the Defendants directly violated his constitutional rights or had knowledge of and acquiesced in any violations. Instead, the Complaint states in a conclusory manner that both Defendants "authoriz[ed]"the use of force against him and that the subordinates of Defendant Velez authorized his placement in TCC. (ECF No. 1, Compl. at ¶ 2.) With respect to the vague allegation that the Supervisory Defendants "authorized" the use of force against him, the Complaint lacks "sufficient factual matter" to show that this claim is facially plausible. *See Fowler*, 578 F.3d at 210. The latter claim that Defendant Velez' subordinates placed Plaintiff in TCC is premised on *respondeat superior* and is not a basis for holding Defendant Velez liable under § 1983. As such, these claims are dismissed without prejudice for failure to state a claim pursuant to § 1915(e)(2)(B).

The Court will also dismiss without prejudice Plaintiff's claim that the Supervisory Defendants established deficient policies that resulted in his placement in TCC. The Third Circuit in *Barkes* reaffirmed its four-part standard, established in *Sample v. Diecks*, for determining whether an official may be held liable under § 1983 for implementing deficient policies. *See Barkes* at 317 (citing *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989)). Under *Sample*, to find that a supervisor acted with deliberate indifference as a policymaker,

> the plaintiff must identify a supervisory policy or procedure that the supervisor defendant failed to implement, and prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory procedure.

*Barkes*, 766 F.3d at 330.

Here, Plaintiff has alleged in a conclusory fashion that

> Defendants, together have written, adopted, imposed, enforced, maintained and are responsible for a number of written and

9

> unwritten rules, regulations, policies, practices, and procedures that makes the conditions of PLAINTIFF's segregation behind a special 8 x 12 cage at the Special Treatment Unit punitive and excessively restrictive prison comparable environment, created, implemented, and enforced by the Defendants.

(ECF No. 1, Compl. at ¶ 21.) Plaintiff Complaint is rife with conclusory allegations and boilerplate, and he has not provided facts describing the policy or procedure that was in effect at the time of the alleged injury or how that policy or procedure caused his constitutional injury. Nor has he provided facts to suggest that Defendants Lanigan and/or Velez were deliberately indifferent to the risk presented by the policy that was in effect at the time of his alleged injury.[3] Because Plaintiff has not stated a civil rights claim based on deficient policies, the Court will dismiss these claims without prejudice as to Defendants Lanigan and Velez.

## V. CONCLUSION

The Complaint is dismissed with prejudice as to the State of New Jersey. The official capacity claims for damages against Defendants Lanigan and Velez are likewise dismissed with prejudice. The Complaint is dismissed without prejudice as to the claims against Defendants Lanigan and Velez in their personal supervisory capacities; to the extent he can cure the deficiencies explained in this Opinion, Plaintiff may submit an Amended Complaint within 30 days. An appropriate Order follows.

---

[3] As explained in *Barkes*, "[t]he essence of the type of claim [the court] approved in *Sample* is that a state official, by virtue of his or her own deliberate indifference to known deficiencies in a government policy or procedure, has allowed to develop an environment where there is an unreasonable risk that a constitutional injury will occur, and that such an injury does occur." 766 F.3d at 319-20. Deliberate indifference in the supervisory context may be demonstrated by "(i) showing that a supervisor failed to adequately respond to a pattern of past occurrences of injuries like the plaintiff['s] or (ii) by showing that the risk of constitutionally cognizable harm was 'so great and so obvious that the risk and the failure of supervisory officials to respond will alone' support the finding that the two-part test is met." *Beers–Capitol v. Whetzel*, 256 F.3d 120, 136–37 (3d Cir. 2001) (emphasis added) (citing *Sample*, 885 F.2d at 1099).

_____
Madeline Cox Arleo, U.S.D.J.

Date: _____, 2016

11