UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEION GRAVES,<br><br>Plaintiff,<br><br>v.<br><br>THE STATE OF NEW JERSEY, et al.,<br><br>Defendants. | Civil Action No. 16-1822 (MCA)<br><br>MEMORANDUM OPINION |

**ARLEO, United States District Judge:**

I. **INTRODUCTION**

Plaintiff Deion Graves, currently confined at the Special Treatment Unit ("STU") in Avenel, New Jersey, has filed an Amended Complaint, alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"). The Court previously granted his IFP application and dismissed his original Complaint at screening pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted. ECF Nos. 2-3. The Court dismissed the Complaint against the State of New Jersey with prejudice and dismissed the Complaint against Gary Lanigan and Jennifer Velez without prejudice. *Id.* Plaintiff subsequently submitted an Amended Complaint naming Gary Lanigan and Jennifer Velez in their individual supervisory capacities.[1] *See* ECF No. 4 at ¶¶ 7, 11. For the reasons explained below, the Court will dismiss the Amended Complaint in its entirety for

---

[1] Although the caption refers to the Defendants in their official capacities, the Amended Complaint states that Plaintiff is suing Defendants in their individual capacities. Petitioner

1

failure to state a claim for which relief may be granted under § 1915(e)(2)(B), administratively terminate this action, and provide Plaintiff with a final opportunity to amend to the extent he can cure the deficiencies in his Amended Complaint.

## II. FACTUAL BACKGROUND

Plaintiff's Amended Complaint is substantially similar to his original complaint. He has sued two high-level supervisory state officials -- Gary M. Lanigan, the Commissioner of the New Jersey Department of Corrections ("NJDOC") and Jennifer Velez, the Commissioner of the Department of Human Services ("DHS") -- for alleged violations of his civil rights at the STU. Plaintiff alleges he was targeted for assault and retaliation by unidentified subordinates of Lanigan and/or Velez on August 21, 2012 while he was confined in the STU, and was subsequently placed in Temporary Close Custody ("TCC") for a two-year period. ECF No. 4, Compl. at ¶ 2. He further alleges Defendants and their subordinates conspired to assault him and have him placed TCC in retaliation for a conflict that Plaintiff had with a correctional officer while he was incarcerated at East Jersey State Prison.[2] *Id.* Petitioner also alleges that his living conditions while in TCC were "hazardous and unsanitary" and that he was "locked behind an 8' x 12' cage that was to remained [sic] locked at all times per DOC Supervisor." *Id.* Plaintiff alleges in the Amended Complaint that his confinement to the 8 x 12 caged cell for a two-year period, from August 21, 2012 until June 2, 2014, violated the Fourteenth Amendment. *See id.* at ¶ 22

The Amended Complaint provides the following additional facts:

> On June 4, 2014, an Administrative decision was made to move
> the PLAINTIFF off of the West Unit where he was housed and

---

[2] With respect to the assault, Plaintiff also alleges in the relief section that Defendants' subordinates committed the assault with Defendants' knowledge, direction, and consent. *Id.* at ¶ 22A.

2

> locked in the 8" x 12" caged in cell, to the south unit 3rd floor lock
> up where other residents on (TCC) Temporary Closed Custody and
> Cell (MAP) Modified Activities Program are housed, Department
> of Corrections officials including officers from internal affairs
> division with video cameras came to the west unit to this caged cell
> where the PLAINTIFF was locked accompanied by (25) officers in
> full riot gear and tear gas, only five officers plus the PLAINTIFF
> could fit in the cell, after the proceeded to spray tear gas into the
> cell for 8 to 10 minutes before going in, they then proceeded to go
> in and extract the PLAINTIFF from the cell handcuffing him and
> forcing him out of the room around the day room area and outside
> across the court yard to the south unit 3rd floor lock up, the
> PLAINTIFF is currently still on the south unit but is now in
> general population.

*Id.* at ¶ 2.

As he did in the original Complaint, Plaintiff alleges that his confinement in TCC was the result of policies and/or procedures and/or regulations established and/or maintained by Defendants Lanigan and Velez. With Respect to Defendant Lanigan, Plaintiff states as follows:

> Mr. Lanigan knew or should have known about an approved or
> indeed promulgated and directed the various restrictive custodial
> policies, practices, and procedures including training of DOC
> personnel and security practices and uses of restraint concerning
> the manner and scope of the abusive treatment of the PLAINTIFF,
> that created the punitive environment and excessively restrictive
> conditions under which the PLAINTIFF is presently confined. Mr.
> Lannigan [sic] knew or should have known about and approved or
> failed to supervise subordinates operating under his authority and
> take steps to prevent or correct each of these violations of the
> PLAINTIFF's Constitutional rights, as alleged more specifically
> below.

*Id.* at ¶ 7. Similarly, with respect to Defendant Velez, Plaintiff alleges as follows:

> Ms. Velez was complicit in and along with the actions of
> [Defendant Lanigan], Ms. Velez knew or should have known about
> and approved or indeed herself promulgate and direct the various
> policies, practices and procedures concerning the matter and scope
> of the unconstitutional treatment of the PLAINTIFF that created
> the punitive environment and excessive restrictive conditions
> under which the PLAINTIFF is presently confined. Ms. Velez
> knew or should have known about and approved or failed to take
> steps to prevent or correct each of these violations of the

3

> PLAINTIFF's Constitutional rights as alleged more specifically below.

*Id.* at ¶ 11. With respect to both Defendants, Plaintiff's Complaint states that

> Defendants, together have written, adopted, imposed, enforced, maintained and are responsible for a number of written and unwritten rules, regulations, policies, practices, and procedures that makes the conditions of PLAINTIFF's segregation behind a special 8 x 12 cage at the Special Treatment Unit punitive and excessively restrictive prison comparable environment, created, implemented, and enforced by the Defendants.

*Id.* at ¶ 21.

Like his original Complaint, Plaintiff's Amended Complaint describes the history of New Jersey's Sexually Violent Predator Act ("SVPA"), N.J.S.A. 30:4-27, *et seq*, and alleges that Sexually Violent Predators ("SVPs") are entitled to treatment during their involuntary confinement and, under the "Patient Bill of Rights," are also entitled to be free of excessive physical restraint and isolation during their confinement. *Id.* at ¶ 12-16.

## III. STANDARD OF REVIEW

Under the PLRA, district courts must review complaints in those civil actions in which a person is proceeding *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B). The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Id.* "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

Here, Plaintiff's Complaint is subject to screening under 28 U.S.C. § 1915(e)(2)(B). When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts first separate the

4

factual and legal elements of the claims, and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Complaint must also allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (citation omitted).

Courts are required to liberally construe pleadings drafted by *pro se* parties. *Tucker v. Hewlett Packard, Inc.*, No. 14-4699 (RBK/KMW), 2015 WL 6560645, at *2 (D.N.J. Oct. 29, 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Such pleadings are "held to less strict standards than formal pleadings drafted by lawyers." *Id.* Nevertheless, pro se litigants must still allege facts, which if taken as true, will suggest the required elements of any claim that is asserted. *Id.* (citing *Mala v. Crown Bay Marina*, Inc., 704 F.3d 239, 245 (3d Cir. 2013)). To do so, [a plaintiff] must plead enough facts, accepted as true, to plausibly suggest entitlement to relief." *Gibney v. Fitzgibbon*, 547 F. App'x 111, 113 (3d Cir. 2013) (citing *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012)). "Liberal construction does not, however, require the Court to credit a pro se plaintiff's 'bald assertions' or 'legal conclusions.'" *Id.* (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). That is, "[e]ven a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief. *Id.* (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

## IV. ANALYSIS

As noted above, Plaintiff has once again sued two high-level supervisory state officials for violations of his federal and state constitutional rights.[3] The Court has screened the Complaint for dismissal, and will dismiss the Amended Complaint in its entirety for failure to state a claim for relief under 28 U.S.C. §§ 1915(e)(2).

From the outset, the Court will dismiss without prejudice Plaintiff's conspiracy claim against both Defendants. Civil rights conspiracies brought under Section 1983 require a "meeting of the minds," and to survive screening or a motion to dismiss, plaintiffs must provide some factual basis to support the existence of the elements of a conspiracy, namely, agreement and concerted action. *See Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970). Here, Plaintiff has not provided sufficient facts regarding the Defendants' alleged participation in the alleged conspiracy to assault him and have him placed in TCC. Nor does his Complaint provide sufficient facts to suggest that the Defendants directly violated his constitutional rights or had knowledge of and acquiesced in any violations. Instead, the Complaint states in a conclusory manner that both Defendants "authoriz[ed]"the use of force against him and that the subordinates of Defendant Velez authorized his placement in TCC. Compl. at ¶ 2. With respect to the vague allegation that

---

[3] To the extent Plaintiff's NJCRA claims mirror his § 1983 claims, those NJCRA claims are addressed in tandem with his federal causes of action. *See Trafton v. City of Woodbury*, 799 F.Supp.2d 417, 443–44 (D.N.J. 2011); *see also Chapman v. New Jersey*, Civ. No. 08–4130, 2009 U.S. Dist. LEXIS 75720, at *7, 2009 WL 2634888 (D.N.J. Aug. 25, 2009) ("Courts have repeatedly construed the NJCRA in terms nearly identical to its federal counterpart...."); *Armstrong v. Sherman*, Civ. No. 09–716, 2010 U.S. Dist. LEXIS 55616, at *15, 2010 WL 2483911 (D.N.J. Jun. 4, 2010) ("[T]he New Jersey Civil Rights Act is a kind of analog to section 1983 ...."); *see generally Hedges v. Musco*, 204 F.3d 109, 122 n. 12 (3d Cir. 2000) (concluding that New Jersey's constitutional provisions concerning search and seizures are interpreted analogously to the Fourth Amendment).

the Defendants "authorized" the use of force against him, the Complaint lacks "sufficient factual matter" to show that this claim is facially plausible. *See Fowler*, 578 F.3d at 210. The latter claim that Defendant Velez' subordinates placed Plaintiff in TCC is premised on *respondeat superior* and is not a basis for holding Defendant Velez liable under § 1983. As such, the conspiracy claims are dismissed without prejudice for failure to state a claim pursuant to § 1915(e)(2)(B).

Plaintiff once again seeks to hold Defendants Lanigan and Velez liable in their personal supervisory capacities for his conditions of confinement, and appears to contend that Defendant's policies caused him to be placed in TCC in an "8x12 caged cell" from approximately August 21, 2012 until June 2, 2014. In screening Plaintiff's original Complaint, the Court explained that *respondeat superior* is not a basis for section 1983 liability. Indeed, "[t]o establish liability under § 1983, each individual defendant 'must have personal involvement in the alleged wrongdoing.'" *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). As such, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Innis v. Wilson*, 334 F. App'x 454, 457 (3d Cir. 2009) (indicating that section 1983 plaintiff could not maintain claim against individual defendant unless said defendant was personally involved in actions causing the claim); *Rode*, 845 F.2d at 1207 (explaining that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*").

7

In *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 316-19 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S. Ct. 2042, 2043 (2015), the Third Circuit outlined "two general ways" in which a supervisor-defendant may be liable for deficient policies: (1) where the supervisor established a policy, custom, or practice that caused the harm; or (2) where the supervisor personally participated in the constitutional violation. The Third Circuit explained these two general types of supervisory liability as follows:

> [f]irst, liability may attach if they, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct. *Id.* (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995)). "Failure to" claims – failure to train, failure to discipline, or, as in the case here, failure to supervise – are generally considered a subcategory of policy or practice liability.

*Id.* The Third Circuit in *Barkes* reaffirmed its four-part standard, established in *Sample v. Diecks*, for determining whether an official may be held liable under § 1983 for implementing deficient policies. *See Barkes* at 317 (citing *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989)). Under *Sample*, to find that a supervisor acted with deliberate indifference as a policymaker,

> the plaintiff must identify a supervisory policy or procedure that the supervisor defendant failed to implement, and prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory procedure.

*Barkes*, 766 F.3d at 330.

Here, Plaintiff has alleged in a conclusory fashion that

8

> Defendants, together have written, adopted, imposed, enforced, maintained and are responsible for a number of written and unwritten rules, regulations, policies, practices, and procedures that makes the conditions of PLAINTIFF's segregation behind a special 8 x 12 cage at the Special Treatment Unit punitive and excessively restrictive prison comparable environment, created, implemented, and enforced by the Defendants.

(ECF No. 4, Compl. at ¶ 21.) Plaintiff's Amended Complaint, like his original Complaint, relies on formulaic language and does not provide sufficient facts describing the policy or procedure that was in effect at the time of the alleged injury or how that policy or procedure caused his constitutional injury. Nor has he provided facts to suggest that Defendants Lanigan and/or Velez were deliberately indifferent to the risk presented by the policy that was in effect at the time of his alleged injury. Because Plaintiff has not stated a civil rights claim based on deficient policies, the Court will again dismiss these claims without prejudice as to Defendants Lanigan and Velez.

Notably, the Amended Complaint also fails to state a conditions of confinement claim based on Plaintiff's confinement in TCC. Plaintiff's conditions of confinement claims arise under the Fourteenth Amendment. *See Youngberq v. Romeo*, 457 U.S. 307, 321–22 (1982) ("Persons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish."). Generally, the Fourteenth Amendment requires that civilly committed persons not be subjected to conditions that amount to punishment, *Bell v. Wolfish*, 441 U.S. 520, 536 (1979),6 within the bounds of professional discretion, *Youngberg*, 457 U.S. at 321–22. Specifically, in *Youngberg*, the Supreme Court held that civilly committed persons do have constitutionally protected interests, but that these rights must be balanced against the reasons put forth by the State for restricting their liberties. *Id.* at 307. The Constitution is not concerned with de minimis restrictions on patients' liberties. *Id.* at 320. Moreover, "due process requires that the conditions

9

and duration of confinement [for civilly confined persons] bear some reasonable relation to the purpose for which persons are committed." *Seling*, 531 U.S. at 265; *see also Barber v. Christie*, No. CIV.A. 10-1888 (SRC), 2010 WL 2723151, at *7–8 (D.N.J. July 7, 2010) (same).

The gravamen of Plaintiff's conditions of confinement claim is that he was housed in TCC for a period of two years and that his living quarters was an 8 x 12 cell that was locked. *See* Complaint at ¶ 2. Plaintiff also states without elaboration that his living conditions in TCC were "hazardous and unsanitary". *Id.* The Third Circuit has held that placement of a civilly committed SVP in segregated confinement, such as TCC, does not violate due process unless the deprivation of liberty is in some way extreme. *See Deavers v. Santiago*, 243 Fed. Appx. 719, 721 (3d Cir. 2007) (applying *Sandin v. Conner*, 515 U.S. 472 (1995), to segregated confinement of civilly committed SVPs).

Here, Plaintiff states only that he was housed for a two-year period in TCC and was housed in an 8x12 prison cell, which fails to state a claim for relief absent more facts to clarify the overall conditions of Plaintiff's confinement in TCC. For instance, the Amended Complaint fails to provide <u>any facts</u> about the time Plaintiff spent inside his cell and outside his locked cell each day/week or other facts to suggest that his deprivation was extreme. Although Plaintiff states that the conditions in TCC were unsanitary and hazardous, this bald allegation is conclusory and is not entitled to the presumption of truth. If Plaintiff elects to submit a Second Amended Complaint regarding the conditions of his confinement in TCC, he must provide additional facts from which the Court could assess the overall conditions during the relevant two-year period.

Finally, the Amended Complaint provides additional facts about Plaintiff's move from West Unit to the South Unit on June 4, 2014. Plaintiff contends that 25 officers arrived at his

10

cell, and that one or more of the officers sprayed tear gas into the cell for 8-10 minutes, handcuffed Plaintiff, and proceeded to move him to the South Unit. The Court does not construe Plaintiff to allege civil rights claims against the officers in their personal capacities because the Amended Complaint does not describe these officers as Defendants and appears to seek relief only from Defendants Lanigan and Velez.[4] To the extent Plaintiff wishes to bring claims against Defendants Lanigan and/or Velez for this incident, the claim is dismissed without prejudice, as Plaintiff has failed to provide any facts suggesting that these Defendants had any personal involvement in this alleged wrong. The allegation that an "administrative decision was made" to move Plaintiff is insufficient to hold Defendants responsible under § 1983.

For the reasons explained in this Memorandum Opinion, the Amended Complaint is dismissed without prejudice in its entirety. The Court will provide Plaintiff with one final opportunity to submit a Second Amended Complaint within 30 days to the extent he can cure the deficiencies in his claims. An appropriate Order follows.

/s/ Madeline Cox Arleo
Madeline Cox Arleo, U.S.D.J.

12-10-18

---

[4] The Court does not reach the question of whether these new claims would be untimely if Plaintiff were to bring them against the individual officers in a second amended complaint.

11